[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14337

_____

TRELLUS RICHMOND,

Plaintiff-Appellant,

versus

MARIO J. BADIA,
in his individual capacity,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-01024-RBD-LRH

————————————

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The question in this appeal is whether a school resource officer is entitled to qualified immunity for throwing a seventh grader to the floor of a middle school lobby. One morning, Trellus Richmond arrived late to middle school with his mother. Like many thirteen-year-olds, he was concerned with his appearance—so much so that he was violating school rules by wearing a hoodie to hide an embarrassing haircut. When his mother told him to take it off, he resisted; his mother pulled at the hoodie, which led him to push her away. That skirmish prompted the front office attendant to radio the school resource officer, Mario Badia, who arrived moments later.

After he arrived, Badia spoke with Richmond for over two minutes standing in the lobby. Then, without warning, Badia grabbed Richmond's face, shoved him in the chest, and threw him to the ground using an "armbar" technique. Badia pinned Richmond down for over three minutes, then pushed him in the back as he walked away. Based largely on a video of the incident, Badia

was prosecuted for, and pleaded guilty to, the crime of battery against Richmond.

In this civil action, the district court granted summary judgment in favor of Badia on Richmond's claims for false arrest and excessive force under 42 U.S.C. § 1983 and battery under Florida state law. The district court held that Badia had arguable probable cause to arrest Richmond for pushing his mother and, therefore, had qualified immunity as to the false arrest claim. The district court similarly held that Badia had qualified immunity as to the excessive force claim and statutory immunity to the Florida-law battery claim.

We agree with the district court's assessment of the false arrest claim but disagree with the district court's conclusion on the excessive force and battery claims. Accordingly, we affirm in part and reverse in part.

## I.    BACKGROUND

Because the district court granted summary judgment, the following facts are taken in the light most favorable to Richmond as the non-moving party. We have also watched the video of the incident.

Richmond was a seventh-grade student at Kissimmee Middle School in Kissimmee, Florida. One morning, his mother brought him to school late, and they went to the school's front office to check in. Richmond was wearing a hoodie that morning to conceal a new haircut that he found embarrassing. Because the

hoodie violated the school dress code, his mother told him to remove it. He did not comply, which led to an argument. Richmond eventually began removing the hoodie with his mother's assistance. During the exchange, Richmond appeared to push his mother. Believing that Richmond had pushed his mother, the front desk assistant radioed for Badia, the school resource officer. While walking to the front office, another staff member told Badia that a student was acting disrespectfully and had "hit or pushed" his mother.

When Badia arrived, he spoke briefly to the front desk assistant and Richmond's mother. By this time, Richmond's hoodie was gone, and he was standing alone at the front desk. For about two minutes, Badia confronted Richmond by cursing at him, mocking him, and pointing his finger at him. Richmond did not look directly at Badia while he was talking, so Badia grabbed the thirteen-year-old student's face. Richmond reacted to the hand coming at his face by trying to block it with his arm and stepping backwards. Badia then shoved Richmond in the chest and grabbed his shirt and arm. Badia pushed Richmond to the center of the lobby and used an "armbar" technique to lift Richmond off his feet, flip him onto his back, and slam him to the ground.

Badia held Richmond down by his forearm, twisting his wrist as he was on the floor. After about three minutes, Badia released Richmond, allowing him to return to his feet. Badia then pushed him to the front desk and told Richmond to "remember

him." Badia asked Richmond's mother if she wanted to press charges against her son for battery, but she declined.

Richmond was never charged with a crime for his conduct that morning. Badia was investigated, terminated, and prosecuted for child abuse and battery. The arrest warrant charged Badia with grabbing, shoving, and slamming Richmond to the ground "for no apparent lawful reason." Badia ultimately pleaded guilty to battery, which requires "[a]ctually and intentionally touch[ing] or strik[ing] another person against the will of the other" or "[i]ntentionally caus[ing] bodily harm to another person." Fla. Stat. § 784.03(1)(a).

Badia's use of force left Richmond with pain in his wrist, ankle, and back for which he sought medical treatment. The pain in his ankle continued for several months following the incident, and the pain in his back continued for three to four years.

Richmond sued Badia in Florida state court for, among other things, false arrest and excessive force under 42 U.S.C. § 1983 and battery under Florida state law. The case was removed to the United States District Court for the Middle District of Florida and after discovery, Badia moved for summary judgment. The district court granted Badia's motion, concluding that he was entitled to qualified immunity for Richmond's false arrest and excessive force claims. The district court also concluded Badia was entitled to statutory immunity on the state law battery claim. Richmond timely appealed.

## II.     STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (citation omitted). "A grant of summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (cleaned up).

"A fact is 'material' if it might affect the outcome of the suit under the governing law." *BBX Capital v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over such a fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although we must view the facts in favor of the nonmoving party, we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010).

## III.    DISCUSSION

Richmond argues that the district court erred in concluding that Badia was entitled to (1) qualified immunity for the Section 1983 claims and (2) statutory immunity for the battery claim. We discuss each argument in turn.

### A.    Richmond's Section 1983 Claims

We start with qualified immunity on the federal claims. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For qualified immunity to apply, a government official must initially establish that he was acting within his discretionary authority when the alleged wrongful acts occurred. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "Once it has been determined that an official was acting with the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Id.* "First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right." *Id.* "Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct." *Id.*

Here, Badia was acting within his discretionary authority at the time of the alleged wrongful acts. Badia was employed as a school resource officer, and his duties included responding to calls regarding possible criminal activity. Consequently, the burden shifts to Richmond to show that Badia is not entitled to qualified immunity from his false arrest and excessive force claims.

### 1. False Arrest and Excessive Force Claims Must Be Evaluated Separately.

Before addressing the facts of this case, we must briefly review the relationship between claims for false arrest and excessive force. Richmond's claims for false arrest and excessive force are both grounded in the Fourth Amendment's prohibition on "unreasonable searches and seizures." U.S. Const. amend. IV; *see also Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (explaining that excessive force claims for arrestees are governed by the Fourth Amendment). As to false arrest, he argues that Badia lacked probable cause to seize him. As to excessive force, he argues that Badia used force that was unreasonably excessive when Badia seized him.

To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest. An arrest—the quintessential seizure of a person—occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes. *California v. Hodari D.*, 499 U.S. 621, 624, 626-27 (1991). Probable cause exists when "a reasonable officer could conclude . . . that there [is] a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (2022) (quotation omitted). Accordingly, when the government has probable cause to arrest someone, a false arrest claim necessarily fails. *Crocker*, 995 F.3d at 1245.

Unlike a false arrest claim, a genuine excessive force claim is not resolved by the existence of probable cause. Even when an officer has probable cause for an arrest, "the manner in which a

search or seizure is conducted" must nonetheless comply with the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). And, although the right to arrest someone necessarily carries with it the right to use some force, law enforcement officers may not use excessive force to make an arrest, and "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, a "genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir.2006)).

We have contrasted such "genuine" excessive force claims with artificial claims—unlike Richmond's claim in this case—that an officer's use of force is excessive only because an arrest was not supported by probable cause. A genuine excessive force claim, we have explained, "is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation," such as a false arrest. *City of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017). Instead, it is a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force. Unlike a "genuine" excessive force claim, an artificial excessive force claim—that force was excessive merely because another Fourth Amendment violation occurred—"is subsumed in the illegal stop

or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000); *see also Bashir*, 445 F.3d at 1331–32; *Gray v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006). Accordingly, a plaintiff cannot double recover—once for false arrest and again for excessive force—when the absence of probable cause is the only thing that makes an officer's use of force unreasonable.

In any event, when a false arrest claim and a genuine excessive force claim arise out of the same incident, the false arrest and excessive force claims "must be analyzed independently." *Lee*, 284 F.3d at 1197; *see also Mendez*, 137 S. Ct. at 1547 (reversing a decision that "conflat[ed] excessive force claims with other Fourth Amendment claims"). "These two inquiries are separate and independent, though the evidence may overlap." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc). Depending on the evidence, "[a] plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither." *Id.* See, e.g., *Jackson*, 206 F.3d at 1174 (officer entitled to qualified immunity on excessive force claim but not for false arrest claim).

## 2. Richmond's False Arrest Claim Fails Because of Qualified Immunity.

Having explained how false arrest and excessive force relate to each other as a general matter, we now turn to Richmond's false arrest claim. Richmond asserts that Badia violated his Fourth Amendment rights because Badia seized him without probable cause. Badia responds that he has qualified immunity against this

false arrest claim because he had *arguable* probable cause to arrest Richmond for battering his mother.[1]

Probable cause requires that "the totality of the circumstances . . . viewed from the perspective of a reasonable officer, establish a probability or substantial chance of criminal activity." *Washington*, 25 F.4th at 898–99 (quotation omitted). Although "an arrest made without probable cause violates the Fourth Amendment," an officer is entitled to qualified immunity if he has "arguable probable cause." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).

We believe Badia had arguable probable cause to arrest Richmond for battery. Uncontroverted testimony establishes that Badia arrived at the scene after two school employees informed him that there had been a physical confrontation between Richmond and his mother. But a reasonable officer in the same circumstances as Badia and having received reports of a fight could have believed that there was probable cause to arrest Richmond at the

---

[1] Although we usually review school seizures under a less exacting reasonableness standard, *Gray*, 458 F.3d at 1304 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985)), both parties have argued this case under probable cause. Because we conclude that Badia had arguable probable cause to arrest Richmond, we need not address the reasonable basis rule.

time. *See* Fla. Stat. § 784.03(1)(a) (battery occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the other" or "[i]ntentionally causes bodily harm to another person"). We therefore conclude that Badia had arguable probable cause to arrest Richmond for battery and is entitled to qualified immunity on the false arrest claim.

### 3. Badia Used Excessive Force in Violation of Clearly Established Law.

Next, we turn to Richmond's excessive force claim. Richmond argues that, even if Badia had arguable probable cause to seize him, Badia used excessive force in violation of the Fourth Amendment when Badia grabbed his face, threw him on the ground, twisted his arm, and pushed him in the back. Richmond further argues that Badia's actions violated his clearly established rights, such that Badia's qualified immunity defense fails. Badia argues, and the district court concluded, that Badia's use of force was justified as incident to an arrest that was supported by arguable probable cause.

We agree with Richmond. As we have explained above, false arrest and excessive force claims are related, but the resolution of the latter does not follow from the resolution of the former. Accordingly, our conclusion that Badia has qualified immunity for the false arrest claim does not mean that he has qualified immunity for

the excessive force claim. Instead, we must independently evaluate whether Badia used excessive force when he seized Richmond.

Excessive force claims in the context of an arrest or investigatory stop are judged under the Fourth Amendment's objective reasonableness standard. *Graham*, 490 U.S. at 395–96. In reviewing the use of force, courts balance the nature and quality of the intrusion on the individual against the government justification for using force. *Id.* at 396. In doing so, we consider: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* We also consider the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted. *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014).

Applying these factors, we have elucidated some general principles. As relevant here, we have held that "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). We have also held that the absence of a legitimate law enforcement justification for using force is indicative of excessive force. *See Lee*, 284 F.3d at 1198 (officer not entitled to qualified immunity for excessive force where the court could "discern no reason, let alone any legitimate law enforcement need" for the force); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1308 (11th Cir. 2017)

(officer not entitled to qualified immunity from excessive force claim where he "unexpectedly slapped" a Bluetooth device from a plaintiff's ear and subsequently punched him in the chest "for no reason").

We conclude that Badia used excessive force under the Fourth Amendment for three reasons.

First, Badia had no law enforcement justification for grabbing Richmond's face, slamming him to the ground, or twisting his arm. *See Lee*, 284 F.3d at 1198; *Stephens*, 852 F.3d at 1308. Badia testified that he slammed Richmond to the ground because, after he grabbed Richmond's face, Richmond "became explosive, he became aggressive . . . when I went to grab him, he kept pulling away." In other words, Badia testified that he threw Richmond to the ground because Richmond resisted Badia's attempts to grab his face. But Badia does not identify any law enforcement justification for grabbing Richmond's face in the first place or for the other things he did to Richmond, such as twisting his wrist while he was lying on the ground or pushing him in the back after Badia allowed Richmond to stand. And, having viewed the video and taking all disputed facts in favor of Richmond, we cannot agree that Richmond was "explosive" or "aggressive"—he was simply stepping backwards, away from Badia's grasping hands.

We underscore that Badia's decision to start the physical confrontation was unrelated to any law enforcement need to restrain or arrest Richmond. We have held that officers may use de minimis force in arresting a suspect, even without resistance. *See*

*Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011); *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997). But our caselaw does not support Badia's position. Here, notwithstanding his probable cause to do so, Badia was not using force to effectuate an arrest. Indeed, Badia does not even argue that grabbing Richmond's face was related to effectuating a lawful arrest. Instead, Badia testified that he grabbed Richmond's face to "direct [Richmond's] gaze toward him" while they were speaking. Accordingly, on this record, Badia identifies no legitimate law enforcement justification for his use of force.

Second, the potential crime at issue was at most a misdemeanor battery, and Richmond neither posed a threat nor was attempting to flee the school lobby. *See* Fla. Stat. § 784.03(1)(a). We have repeatedly held that less force is appropriate when the crime at issue is a misdemeanor, and the suspect does not pose a threat or attempt to flee. *See Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (grabbing a suspect's arm, using a chokehold, and throwing him to the ground was excessive where crime at issue was a misdemeanor); *Stephens*, 852 F.3d at 1322 (slaps and hits to the chest were excessive where suspect was not resisting or attempting to flee and the crimes at issue were misdemeanors); *Stryker v. City of Homewood*, 978 F.3d 769, 774 (11th Cir. 2020) (excessive force where the crime at issue was a misdemeanor and suspect did not attempt to flee or pose a threat). Like the plaintiffs in *Stephens*, *Reese*, and *Stryker*, Richmond was being investigated for a misdemeanor, did not pose a threat to anyone's safety, and was not

attempting to flee. We further note that Richmond was just thirteen years old, considerably smaller than Badia, and standing in a middle school lobby with his mother.

Third, Richmond did not refuse to obey any lawful commands. Video evidence establishes that Richmond stood at a counter motionless listening to Badia for over two minutes before Badia used force. As Badia himself testified, Richmond "was just standing there" at the time Badia grabbed Richmond's face. Even assuming Richmond's brushing away of Badia's hand could be reasonably interpreted as resistance, that "minor transgression does not mean that the force allegedly used was a constitutionally permissible response, or that that the agent [is] entitled to qualified immunity." *Saunders*, 766 F.3d at 1269. Viewing the facts in the light most favorable to Richmond, Badia never issued a command that Richmond disobeyed that could have justified the use of force.

Based on our review of the video of the encounter and taking all reasonable inferences in Richmond's favor, he remained passive throughout the entire encounter, never attempted to flee, never refused any lawful commands, and did not pose a threat to Badia or others. We therefore conclude that a reasonable jury could find that Badia's use of force was excessive.

Having determined that a reasonable jury could conclude that Badia used excessive force, we now must decide whether that right was clearly established at the time of the incident. The requirement that the violated right be clearly established is designed to ensure that officers have fair notice of what conduct is

proscribed. *See Hope v. Pelzer,* 536 U.S. 730, 739 (2002). For purposes of qualified immunity, "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).

A plaintiff can demonstrate that a right was clearly established in three ways. First, "materially similar" case law may give an officer fair notice that his conduct would violate a constitutional right. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Second, the plaintiff can show the existence of a "broader, clearly established principle that should control the novel facts of [his] situation." *Id.* In other words, even "[i]f there is no case law directly on point, [g]eneral statements of the law contained within the Constitution, statute, or caselaw may sometimes provide 'fair warning' of unlawful conduct." *Id.* (internal quotation marks omitted). Finally, in rare instances and if no materially similar caselaw exists, an official may still have notice when their conduct violates a constitutional right with obvious clarity. *Id.* Absent one of these standards being met, qualified immunity will protect an officer for conduct that falls within the "hazy border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 599 (2004).

Badia was on notice that his conduct was unlawful for at least two reasons.

First, a "broader, clearly established principle" in our caselaw gave Badia fair warning. *Mercado*, 407 F.3d at 1159. We have "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses

gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders*, 766 F.3d at 1265 (denying qualified immunity to officer who slammed suspect's head on the ground when suspect was not dangerous or attempting to flee); *see also, Hadley*, 526 F.3d at 1330, 1334 (denying qualified immunity to officer who punched a handcuffed and compliant suspect in the stomach); *Lee*, 284 F.3d at 1198 (denying qualified immunity to officer who slammed compliant suspect's head onto car after suspect had been handcuffed.); *Slicker*, 215 F.3d at 1227 (denying qualified immunity to officer who slammed arrestee's head against ground after arrestee had been secured and was not resisting); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997) (denying qualified immunity to officer who used "obviously unnecessary" force to restrain a suspect who "was offering no resistance at all").

It is true that most of these decisions were concerned with gratuitous use of force on handcuffed suspects, but we have already held that "the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing[.]" *Stephens*, 852 F.3d at 1326. And we have applied that rationale to deny qualified immunity when the police have unnecessarily thrown non-resisting, unhandcuffed suspects on the ground. *See Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. April 7, 2022) (concluding that body slamming a suspect was a gratuitous use of force "that our precedents have established constitutes excessive force"); *Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020) (concluding

that established law forbade conduct of officer who "threw [a suspect] to the ground"). Here, Richmond was under control, not resisting, and obeying commands when Badia used force. Indeed, Badia confirms that during their two-minute conversation, Richmond "just stood there." And Richmond was obviously restrained when he was on the floor, but Badia torqued his wrist, nonetheless.

Second, Badia was on notice that his conduct was unlawful under the "obvious-clarity" test. For the obvious clarity standard to be met, an officer's conduct must be of a nature that every reasonable officer would have known the conduct was unlawful. *Gray*, 458 F.3d at 1307 (citing *Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005)). The obvious clarity test may be met when an officer's conduct is over-reactive and disproportionate relative to the response of the apprehended person. *Stephens*, 852 F.3d at 1317.

We have applied the obvious clarity test to deny qualify immunity under similar circumstances. Two precedents are particularly compelling: *Gray v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006) and *Patel v. City of Madison*, 959 F.3d 1330, 1343–44 (11th Cir. 2020).

In *Gray v. Bostic*, we held that a school resource officer's forcible restraint of a compliant student, without a safety justification, was unreasonable and thus violated the Fourth Amendment with obvious clarity. 458 F.3d. at 1307. There, the officer witnessed a nine-year-old student threaten a gym teacher. *Id.* at 1300. In response, the officer commanded the student out of the gym and into a lobby—a command that the student obeyed. *Id.* at 1301. The

officer then handcuffed the student to punish her for making the threat. *Id.* at 1306. We held that the officer's conduct was an obvious violation of the student's Fourth Amendment right to be free from unreasonable seizure because the force lacked a valid safety justification and was not applied to make an arrest. *Id.* at 1307.

Of course, there are some differences between this case and *Bostic*. But they mostly come down in favor of Richmond. Like the child in *Bostic*, Richmond was not a safety threat by the time Badia arrived and, like the officer in *Bostic*, Badia's use of force on Richmond was unrelated to effectuating an arrest or any law enforcement justification. But unlike the officer in *Bostic*, Badia did not observe any criminal activity himself and did not merely handcuff Richmond. If a seizure is unreasonable with "obvious clarity" when an officer handcuffs a compliant student after personally witnessing a potential crime, then it is even more clearly unreasonable for an officer to grab a child's face, throw him to the ground, and twist his arm after only hearing about a potential crime.

In *Patel v. City of Madison*, we held that a police officer's leg-sweep takedown of a compliant, non-resisting person violated the Fourth Amendment with "obvious clarity." 959 F.3d at 1343. Patel was a 57-year-old grandfather who had recently emigrated to the United States from India to help raise his grandchildren. *Id.* at 1333. He spoke no English and weighed only 115 pounds. Officers stopped Patel, who they mistakenly identified as the subject of a call regarding suspicious activity in the neighborhood. *Id.* During this encounter with police, Patel did not resist or attempt to flee.

*Id.* at 1344. Yet the officer conducting the investigatory stop, weighing roughly 150 pounds, performed a leg-sweep maneuver to forcefully throw Patel on the ground. *Id.* at 1335. Because Patel was "somewhat frail and was not resisting or attempting to flee," we concluded that no reasonable officer could have thought that "sweeping [his] legs out from under him and throwing him to the ground" was a reasonable use of force. *Id.* at 1343–44.

We recognized in *Patel* that it is obviously unreasonable for officers to use the same high degree of force on a physically weak non-resisting suspect that they might justifiably use to restrain a physically strong suspect who is resisting. Like Patel, who was frail and elderly, Richmond was a thirteen-year-old boy and significantly smaller than Badia. Nevertheless, Badia used an armbar technique to forcefully throw Richmond to the ground. Our precedents establish that the unconstitutionality of Badia's conduct—taking all inferences in favor of Richmond, as we must—was obviously clear.

### B.    *Richmond's State Battery Claim*

Richmond also argues that Badia is not entitled to statutory immunity on the battery claim. We agree. Under Florida law, no officer shall be held personally liable in tort for any action within the scope of his or her employment or function, unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). *See Keck v. Eminisor*, 104 So. 3d 359,

361 (Fla. 2012). Nonetheless, "[i]f excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996); *see also Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006).

Here, a reasonable jury could conclude that Badia acted maliciously, in bad faith, or with wanton and willful disregard of Richmond's rights. As explained above, taking the facts in the light most favorable to Richmond, Badia's use of force against Richmond was clearly excessive. Consequently, the district court erred in concluding that Badia was entitled to statutory immunity on Richmond's battery claim.

## IV.    CONCLUSION

For these reasons, we **AFFIRM IN PART AND REVERSE IN PART** the district court's grant of summary judgment. We **REMAND** for further proceedings consistent with this opinion.

20-14337 BRANCH, J., Concurring in part and dissenting in part 1

BRANCH, Circuit Judge, concurring in part and dissenting in part:

This appeal tasks us with deciding whether a school security officer who seized and applied force to a then-13-year-old student who had reportedly shoved his mother is entitled to qualified immunity on the student's excessive force and battery claims. The majority and I agree that Badia had at least arguable probable cause to arrest Plaintiff Richmond at the time of the investigatory stop. Therefore, Badia was entitled to qualified immunity on the false arrest claim. However, the majority and I disagree on whether Badia is entitled to qualified immunity on the excessive force claim.

The challenged force in this case occurred when security officer Mario J. Badia grabbed Trellus Richmond's face and Richmond responded by pushing the officer's hand away. After his arm was slapped away, Officer Badia shoved Richmond, grabbed his arm, pushed him to the center of the room and arm-barred Richmond, lifting him off his feet and forcing him to the ground. Badia held Richmond down by his forearm, twisting his wrist as he was on the floor, and did not release him for three minutes. Eventually, Badia released Richmond, allowing him to return to his feet. Badia then pushed him to the front desk and told Richmond to "remember him."

In order to succeed in his claim that qualified immunity should not apply to his excessive force claim, Richmond must show both that (1) Badia used unconstitutionally excessive force against him and (2) the Fourth Amendment right violated was clearly

2 BRANCH, J., Concurring in part and dissenting in part 20-14337

established at the time. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

A "claim that law enforcement officials used excessive force in the course of a seizure is "properly analyzed under the Fourth Amendment's objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). As the majority opinion explains, analyzing an excessive force claim "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Other considerations are the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted." *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (quotation omitted and alteration adopted).

In this excessive force case, we have two incidents of force. First, Badia grabbed Richmond's face and turned it toward him. Second, in reaction to Badia's grab, Richmond knocked Badia's arm away, resulting in Badia arm-barring and forcing Richmond to the ground.[1] While the majority groups these incidents together and

---

[1] Taking Richmond's asserted facts as true, Badia's use of force left Richmond with pain in his wrist, ankle, and back for which he sought medical treatment. The pain in his ankle continued for several months following the incident, and the pain in his back continued for three to four years.

20-14337 BRANCH, J., Concurring in part and dissenting in part 3

concludes that the force was excessive, these incidents are more appropriately viewed as separate aspects of the encounter. And in so viewing them, the *de minimis* nature of the force becomes apparent. The Supreme Court tells us "[i]n assessing a claim of excessive force," to pay "careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241 (2021) (quotations omitted). Therefore, I will analyze Badia's use of force at each stage of the altercation.

Turning to the first use of force against Richmond, as Badia testified at his deposition, when he first encountered Richmond he was investigating whether Richmond had committed a crime. An investigatory stop with reasonable suspicion is legal under our precedent. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968)). At this point in the interaction, Badia had at least reasonable suspicion to believe that Richmond had battered his mother. Badia was engaged in this investigatory stop when he grabbed Richmond's face and turned it towards his.

I agree with the majority that Badia's use of force to grab Richmond's face was unnecessary. However unnecessary, *de minimis* force is not unconstitutional when an officer is engaged in a lawful action. *See Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011) ("Though we are skeptical that the force alleged was truly necessary under the circumstances, we cannot find a constitutional violation based on its usage. Even if unnecessary, the force used against Croom was *de minim[i]s.*"); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) ("But, even

4 BRANCH, J., Concurring in part and dissenting in part 20-14337

though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful.")

Further, *de minimis* force can be constitutional even if the interaction does not result in an arrest of the suspect. *See, e.g.*, *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (involving a *Terry* stop that did not lead to an arrest); *Croom*, 645 F.3d at 1245 (involving a detention during the execution of a search warrant). In the *Terry* stop context, in *Jones*, we held that a far more significant use of force than grabbing a suspect's face was appropriate during investigations into possible criminal activity. *See Jones*, 121 F.3d at 1458 (finding that officers did not use excessive force when they slammed the petitioner against a wall, kicked his legs apart, made him put his hands above his head and caused his pants to tear and wallet to scatter across the ground). Accordingly, Badia's first use of force, the head grab, was *de minimis* and not unconstitutional.

Because Badia's first use of force was not unconstitutional, neither was his second use of force—responding to Richmond knocking his hand away by arm-barring him and pushing him to the floor. As the Supreme Court repeatedly reminds us and our sister Circuits, chief among the relevant facts in an excessive force claim is whether the suspect was actively resisting at the time. *See Graham*, 490 U.S. at 396. Richmond's resistance allowed Badia to escalate his use of force against him.

Further, we have held that suspects may endure minor inflictions of uncomfortable force and even injuries in the course of

20-14337 BRANCH, J., Concurring in part and dissenting in part 5

a lawful detention. *See Brown*, 608 F.3d at 740 ("For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls."); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (handcuffing tight enough to cause minor abrasions was *de minimis*); *Post*, 7 F.3d at 1559 (finding that pushing a plaintiff up against a wall and applying a chokehold to the unresisting plaintiff while affixing handcuffs was *de minimis* force). Accordingly, Badia's second use of force in response to Richmond's resistance was not unconstitutional.[2]

---

[2] Richmond also sued Badia for battery under state law. Under Florida law,

> An officer . . . may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). While Badia pleaded guilty to state law battery, he did not admit to acting in bad faith or with malicious purpose. *See* Fla. Stat. § 784.03. Therefore, his guilty plea is not determinative as to whether he can be sued under Florida's waiver of sovereign immunity statute.

"Pursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006). Accordingly, because Badia's

6 BRANCH, J., Concurring in part and dissenting in part 20-14337

Moreover, even if Badia had used excessive force at any point during his encounter with Richmond, Richmond's claim would still fail because Richmond cannot prove the second requirement to defeat qualified immunity—that, at the time of the altercation, Badia's use of force constituted a clearly established violation of the Fourth Amendment right against the use of excessive force.[3] *See Brown*, 608 F.3d at 734.

"[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). "A right may be clearly established for qualified immunity purposes in one of three ways: (1) [Eleventh Circuit or Supreme Court] case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional

---

use of force was constitutional and not excessive, I would uphold the district court's decision that Badia may not be held personally liable in tort under Florida law.

[3] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

20-14337 BRANCH, J., Concurring in part and dissenting in part 7

right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (quotation omitted). I agree with the majority that the first option does not apply here—there is no Eleventh Circuit or Supreme Court case law with indistinguishable facts clearly establishing that Badia's conduct was unconstitutional.

Thus, the majority turns to the second option, asserting that its broad proposition—"a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands"—was clear and specific enough to give "every objectively reasonable government official facing the[se] circumstances" notice that Badia's use of force was unreasonable.[4] *See Saunders*, 766 F.3d at 1265; *Davis v. Waller*, 2022 WL 3339482, at ⋆3 (11th Cir. Aug. 12, 2022) (quotations omitted). *See Saunders*, 766 F.3d at 1265. I disagree.

As an initial matter, the Supreme Court prohibits us from denying qualified immunity based on such a broad framing of a clearly established principle. As the Supreme Court has warned us time and again in numerous per curiam opinions, a statement of law that clearly establishes a constitutional right should not be overbroad. *See, e.g., White v. Pauly*, 580 U.S. 73 (2017) (per

---

[4] I would argue that a clear principle about what type of force is excessive would not use the term "excessive force" in its definition.

8 BRANCH, J., Concurring in part and dissenting in part 20-14337

curiam) (holding that a general principle of law lacked the requisite specificity to provide notice to a reasonable officer); *Mullenix v. Luna*, 577 U.S. 7, 12–13 (2015) (per curiam) (same); *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (per curiam) (same).

Recently in *Rivas-Villegas v. Cortesluna*, the Supreme Court emphasized that finding a clearly established principle for a Fourth Amendment excessive force claim is exceedingly difficult. 142 S. Ct. 4, 7–8 (2021) (per curiam). "[S]pecificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 8. (quotation omitted). To be sure, the Supreme Court's "case law does not require a case directly on point for a right to be clearly established." *Id.* But, "[t]his inquiry" into clearly established law "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotation omitted). The same day the Supreme Court issued *Rivas-Villegas*, it also decided *City of Tahlequah, Oklahoma v. Bond*, which held that a clear principle of law "that deliberate or reckless preseizure conduct can render a later use of force excessive" is "much too general to bear on whether the officers' particular conduct here violated the Fourth Amendment." 142 S. Ct. 9, 12 (2021) (per curiam). Yet, a year later, the majority in this case announces a similarly general principle—that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not

20-14337 BRANCH, J., Concurring in part and dissenting in part 9

resisting, and obeying commands"—which is no more specific than *City of Tahlequah*'s general statement of principle that the Supreme Court found was overbroad. Absent a clear statement of law, Badia did not have notice that his conduct was unlawful.

Turning to the third option, the majority also holds that Officer Badia had notice that his use of force was unconstitutional because his conduct violated the Fourth Amendment with "obvious clarity." Again, I disagree.

For an officer's actions to violate the Constitution with "obvious clarity," the "words of the pertinent . . . federal constitutional provision"—here, the Fourth Amendment—must be "specific enough to establish clearly the law applicable" to the officer's conduct. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). In fact, the Supreme Court has found a constitutional violation under the "obvious clarity" test only when "[c]onfronted with . . . particularly egregious facts" that "any reasonably officer" would "realize[] . . . offended the Constitution." *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020). In *United States v. Lanier*, the Supreme Court provided extreme hypotheticals of "welfare officials . . . selling foster children into slavery" and officers beating a suspect to obtain a confession as conduct that would violate the Constitution with "obvious clarity." 520 U.S. 259, 271 (1997); *see also Hope*, 536 U.S. at 745 (holding that handcuffing a prisoner to a hitching post in a painful position with limited access to water and bathroom facilities obviously violated the Eighth Amendment and the officers were not entitled to qualified immunity); *Taylor*, 141 S. Ct. at 54 (holding

10 BRANCH, J., Concurring in part and dissenting in part 20-14337

that it was obviously clear that holding a prisoner naked, in a cell covered in feces, including inside the water faucet, was unconstitutional).

In stark contrast, in this case, the force used against Richmond during the execution of a lawful investigation into a potential crime both before and after he hit Officer Badia's hand away was minor, not "egregious." These incidents certainly did not violate the Fourth Amendment with obvious clarity.

I note also that the majority appears to combine the third option for establishing that an officer violated clearly established law—the "obvious clarity" test—with the first option for showing that a right is clearly established—through case law with indistinguishable facts. To that end, the majority cites *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1307 (11th Cir. 2006)—in which we found that a school resource officer violated the Fourth Amendment with obvious clarity when he handcuffed a nine-year-old girl to punish her—to argue that Badia's conduct violated the Fourth Amendment with "obvious clarity" as well. However, *Gray* did not involve an excessive force claim, but rather an illegal seizure claim. *Id.* at 1304 ("[Gray's] excessive force claim is not an independent claim, but rather is subsumed in her illegal seizure claim . . . Thus our inquiry focuses on [the officer's] seizure of Gray.") It would not be clearly obvious to any reasonable police officer that a case involving an unlawful seizure would be relevant to determine what is or is not excessive force during a lawful seizure. *See Kisella v. Hughes*, --- U.S. ----, 138 S. Ct. 1148, 1153 (2018).

20-14337 BRANCH, J., Concurring in part and dissenting in part 11

Officer Badia's conduct in grabbing Richmond's face may have been rude, even degrading.  But it was not an unconstitutional use of excessive force, much less a clearly established one.  I respectfully dissent.