[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10011

_____

NICHOLAS HERNANDEZ,
a.k.a. Nicholas Trupia,

                                                        Plaintiff-Appellant,

*versus*

SHERIFF OF MANATEE COUNTY, FLORIDA,
KEYION LAWS,
JOHN GIRGIS,
KRYSTLE MOORE-AGUILERA,
ELIER SANTANA,
all in their individual capacity as deputies and agents
of the Manatee County Sheriff's Office, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01488-KKM-UAM

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

In a nine-month span, Manatee County Sheriff's Office deputies arrested Nicholas Hernandez four times. Three arrests were warrant-based; the other one was warrantless. Hernandez brought four 42 U.S.C. § 1983 claims based on the arrests—two malicious prosecution claims for the first two arrests, a false arrest claim for the third warrant-based arrest, and a false arrest claim for the warrantless arrest.[1] For the malicious prosecution claims, he alleged that two deputies violated his Fourth Amendment right to be free from unlawful seizure because they should have known that their affidavits supporting the warrant applications leading to his warrant-based arrests failed to establish probable cause that Hernandez committed a crime. For the false arrest claims, he alleged that two other deputies violated his Fourth Amendment right because they

_____

[1] Hernandez brought five other claims based on four other arrests. The district court granted summary judgment for the defendants on the five other claims. Because Hernandez does not appeal the summary judgment, we do not discuss those claims any further.

lacked probable cause to arrest him. The district court dismissed Hernandez's claims, and Hernandez now appeals. After careful review, and with the benefit of oral argument, we conclude that Hernandez failed plausibly to allege that the deputies violated his Fourth Amendment right. So we affirm.

## FACTUAL BACKGROUND

From August 2019 to May 2020, Manatee County Sheriff's Office deputies arrested Hernandez four times—once in August 2019, once in January 2020, once in April 2020, and once in May 2020.

### The August 2019 Arrest

On August 5, 2019, Hernandez was arrested for felony theft. The arrest was based on a warrant. To obtain the warrant, Deputy John Girgis swore in an affidavit that he had probable cause to believe that Hernandez committed the theft. Specifically, Deputy Girgis averred that Hernandez, acting as a landlord, stole his tenant's personal property from the residence that the tenant leased from Hernandez. Before drafting the affidavit, Deputy Girgis did not interview Hernandez. The State Attorney's Office for Florida's Twelfth Judicial Circuit later abandoned the theft charge.

### The January 2020 Arrest

On January 13, 2020, Hernandez was arrested for driving with a suspended license. This arrest was also based on a warrant. To obtain the warrant, Deputy Elier Santana swore in an affidavit that there was probable cause to believe that Hernandez was

driving with a suspended license. The State Attorney's Office abandoned the charge on April 15, 2020.

### The April 2020 Arrest

A week after the charge was abandoned, on April 22, 2020, Hernandez was arrested, again, for driving with a suspended license and also for resisting arrest without violence. Deputy Jason Riley initially approached Hernandez to arrest him for driving with a suspended license based on the same warrant from the January 2020 arrest. Before the arrest, Hernandez told Deputy Riley that the driving-with-a- suspended-license charge had already been abandoned. But Deputy Riley arrested Hernandez anyway and also prepared a new affidavit swearing that Hernandez resisted arrest by failing to follow lawful orders. Deputy Riley's new affidavit led to the State Attorney's Office charging Hernandez with resisting arrest without violence. But the State Attorney's Office later abandoned both charges.

### The May 2020 Arrest

And finally, on May 13, 2020, Hernandez was arrested for burglary with an intent to commit battery. Deputy Jeff Cowling arrested Hernandez without a warrant. Before the arrest, Deputy Cowling interviewed the alleged victims—Hernandez's in-laws—who told Deputy Cowling that Hernandez entered their home, struck them both, and took Hernandez's children. Deputy Cowling did not interview Hernandez before arresting him. Three

months later, Hernandez's in-laws recanted their statement, and the State Attorney's Office abandoned the burglary charge.

## PROCEDURAL HISTORY

### *The Complaint*

Based on the four arrests, Hernandez sued Deputies Girgis, Santana, Riley, and Cowling under § 1983, alleging the deputies violated his Fourth Amendment right to be free from unlawful seizure. Hernandez's lawsuit had four claims.

Two were malicious prosecution claims. He brought a malicious prosecution claim against Deputy Girgis for the August 2019 warrant-based arrest for theft of Hernandez's tenant's personal property. For that claim, he alleged that Deputy Girgis violated the Fourth Amendment because the deputy should have known his affidavit supporting the warrant application did not establish probable cause to believe that Hernandez committed theft. Hernandez also brought a malicious prosecution claim against Deputy Santana for the January 2020 warrant-based arrest for driving with a suspended license. For that claim, too, Hernandez alleged that Deputy Santana violated the Fourth Amendment because the deputy should have known his affidavit supporting the warrant application failed to establish probable cause to believe Hernandez drove with a suspended license.

The other two claims were for false arrest. Hernandez brought a false arrest claim against Deputy Riley for the April 2020 warrant-based arrest for driving with a suspended license and for resisting arrest without violence. He alleged that Deputy Riley

violated the Fourth Amendment by arresting him without probable cause to believe he committed either crime.  And Hernandez brought a false arrest claim against Deputy Cowling based on the May 2020 warrantless arrest for burglary with an intent to commit battery against his in-laws.  As to that claim, too, Hernandez alleged that Deputy Cowling violated the Fourth Amendment by arresting him without probable cause to believe he committed burglary.

*The Motion to Dismiss*

The deputies moved to dismiss Hernandez's claims for two reasons.  First, they argued that Hernandez failed to allege sufficient facts to support his Fourth Amendment claims for malicious prosecution and false arrest.  And second, the deputies asserted that they were entitled to qualified immunity because, even if they violated the Constitution, their actions did not result in behavior that was clearly established as unconstitutional.  The district court agreed that the deputies were entitled to qualified immunity and dismissed Hernandez's claims.  Hernandez appeals the dismissal.

**STANDARD OF REVIEW**

We review a district court's dismissal of a plaintiff's complaint "de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation, emphasis, and internal citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

24-10011                Opinion of the Court                7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and internal citation omitted).

## DISCUSSION

We divide our discussion into two parts.  First, we consider Hernandez's malicious prosecution claims against Deputies Girgis and Santana.  Then, we address his false arrest claims against Deputies Riley and Cowling.

*Hernandez's Malicious Prosecution Claims against Deputies Girgis and Santana*

The Fourth Amendment protects the right to be free from "unreasonable . . . seizures."  U.S. Const. amend. IV.  A law enforcement officer can violate that right by initiating a malicious prosecution which results in an "unreasonable seizure pursuant to legal process." *Thompson v. Clark*, 596 U.S. 36, 42 (2022).  Legal process includes submitting an affidavit supporting a warrant application. *See Williams v. Aguirre*, 965 F.3d 1147, 1162–63 (11th Cir. 2020) (explaining that claims based on police officers' affidavits supporting warrant applications are malicious prosecution claims).

To show a violation of the Fourth Amendment, a plaintiff must plausibly allege that (1) the common law elements of malicious prosecution were met, and (2) an unreasonable seizure occurred. *See Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). "The common law elements include (1) a criminal prosecution instituted or continued by the . . . defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff['s] . . . favor; and (4) caused damage[.]" *Id.* (quotation omitted).

<u>Malicious Prosecution Claim against Deputy Girgis</u>

We start with Hernandez's malicious prosecution claim against Deputy Girgis. Hernandez argues the district court erred in dismissing this claim based on the August 2019 warrant-based arrest for theft of his tenant's personal property.

To meet the common law elements for malicious prosecution, the plaintiff must allege that the officer acted "with malice and without probable cause." *See id*. That requires the plaintiff to allege sufficient facts showing either "that the officer who applied for the warrant should have known that his application failed to establish probable cause or that an offic[er] . . . intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Laskar v. Hurd*, 972 F.3d 1278, 1296 (11th Cir. 2020) (quotation and internal citation omitted).

Here, Hernandez did not allege that Deputy Girgis did either. Hernandez did not allege that Deputy Girgis "intentionally or recklessly made misstatements or omissions" in his affidavit. *See id*. And he did not allege that Deputy Girgis "should have known" that his affidavit supporting the warrant application "failed to establish probable cause." *See id*.

Hernandez pushes back on that last part. He points to the allegations in the complaint that Deputy Girgis failed to interview him before the arrest and that, if interviewed, he would have told the deputy exonerating information that the tenant was lawfully evicted and abandoned the personal property. Based on those facts, Hernandez contends he did plausibly allege that Deputy Girgis

should have known his affidavit supporting the warrant application failed to establish probable cause.

But "the Fourth Amendment does not require a perfect investigation before an arrest is made or a charge is brought." *See Harris v. Hixon*, 102 F.4th 1120, 1125 (11th Cir. 2024). That is, an officer need not "explore or eliminate every theoretically plausible claim of innocence" to have probable cause. *See Washington v. Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019) (quotation and internal citation omitted). Nor does an officer's failure to interview a suspect, without more, undermine probable cause. *See District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation[.]"). Instead, only an investigative defect—like when an officer "consciously and deliberately d[oes] not make an effort to uncover reasonably discoverable, material information"—undermines probable cause. *Rivera*, 939 F.3d at 1246 (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1230 (11th Cir. 2004), *abrogated on other grounds by Williams*, 965 F.3d at 1159).

Hernandez did not allege a sufficient investigative defect. The complaint did not contain any facts showing that Deputy Girgis "consciously and deliberately" avoided interviewing him. *See id.*

We have not overlooked *Sylvester v. Fulton County*, 94 F.4th 1324 (11th Cir. 2024). There, the plaintiff brought a malicious prosecution claim against an investigator and provided evidence that the investigator knew about the plaintiff's alibi and intentionally

omitted it from the affidavit supporting the warrant application that led to the plaintiff's arrest. *See id*. at 1327, 1331–32. Despite that evidence, the district court concluded the investigator did not violate the Fourth Amendment. *Id*. We reversed, explaining that "[w]hen a police officer intentionally lies or recklessly misleads a judge to obtain an arrest warrant, the resulting arrest violates the Fourth Amendment." *Id*. at 1326.

That's not what happened here. There were no facts in Hernandez's complaint showing that Deputy Girgis knew about any exonerating evidence and intentionally left it out of the affidavit. Without these facts, Hernandez failed plausibly to allege that Deputy Girgis violated the Fourth Amendment by "intentionally l[ying to] or recklessly mislead[ing]" the judge who signed the August 2019 arrest warrant. *See id*.

### Malicious Prosecution Claim Against Deputy Santana

Next, we turn to Hernandez's malicious prosecution claim against Deputy Santana. Hernandez also argues that the district court erred in dismissing this claim.

"To decide whether a complaint survives a motion to dismiss, we use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). First, we "identify" and "disregard[]" the "conclusory allegations" that "are not entitled to the assumption of truth." *Id*.; *see also Iqbal*, 556 U.S. at 678–81 (explaining that on a motion to dismiss courts do not "accept as true a legal conclusion couched as a factual allegation"); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that we do

24-10011                Opinion of the Court                11

not credit "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts" (quotation omitted)).  Second, "we assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679).

Here, under the first step, we disregard Hernandez's allegation that Deputy Santana should have known that the affidavit did not establish probable cause to believe that Hernandez drove with a suspended license because it was a legal conclusion without plausible factual allegations supporting it.  *See Iqbal*, 556 U.S. at 678–81; *McCullough*, 907 F.3d at 1333; *Jackson*, 372 F.3d at 1262.  Without that allegation, all we are left with is the fact that Deputy Santana wrote an affidavit swearing that there was probable cause to believe Hernandez drove with a suspended license, which is a crime under Florida law.  *See* Fla. Stat. § 322.34(2).  Without more, there are no remaining factual allegations showing that Sanatana acted "with malice and without probable cause."  *See Black*, 811 F.3d at 1266.  Thus, Hernandez did not plead sufficient facts to show this required element of a Fourth Amendment violation for malicious prosecution.  *See id*.

*Hernandez's False Arrest Claims Against Deputies Riley and Cowling*

That leaves us with Hernandez's false arrest claims against Deputies Riley and Cowling.  "An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause[.]" *Garcia v. Casey*, 75 F.4th

12                    Opinion of the Court                    24-10011

1176, 1186 (11th Cir. 2023) (internal citation omitted).  So to plausibly allege a Fourth Amendment violation for false arrest, the complaint must "establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

### False Arrest Claim Against Deputy Riley

Hernandez argues the district court erred in dismissing his false arrest claim against Deputy Riley based on the April 2020 arrest for driving with a suspended license and for resisting arrest without violence.  "[A]n officer ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant, regardless of whether the facts known to the officer support probable cause." *See Williams*, 965 F.3d at 1162 (citing *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)).  A warrant is facially valid when "the affidavit[] attached to the warrant[] provided probable cause to believe that [the suspect] committed the offense[] charged." *See Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995); *see also Fullman v. Graddick*, 739 F.2d 553, 562 (11th Cir. 1984) (affirming dismissal of a Fourth Amendment false arrest claim against an officer who arrested the plaintiff based on a warrant because the complaint's non-conclusory allegations "show[ed] the warrants were executed with probable cause").

Here, the complaint alleged Deputy Riley arrested Hernandez based on a warrant for driving with a suspended license.  The arrest warrant was facially valid because Deputy Santana provided a supporting affidavit stating that there was probable cause to believe Hernandez drove with a suspended license.  *See Pickens*, 59

F.3d at 1206.  Because the complaint established Deputy Riley executed a facially valid arrest warrant, there were no facts showing that the deputy lacked probable cause to arrest Hernandez.  *See Williams*, 965 F.3d at 1162; *Fullman*, 739 F.2d at 562.  As a result, Hernandez failed plausibly to allege that Deputy Riley violated the Fourth Amendment for false arrest.  *See Richmond*, 47 F.4th at 1180.

Hernandez counters that Deputy Riley lacked probable cause to arrest him for driving with a suspended license because he told the deputy that the charge had already been abandoned before the arrest.  But the fact that the charge had been abandoned by the prosecutor does not mean Deputy Riley lacked probable cause for the arrest.  *See Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998), *abrogated on other grounds by Nieves v. Bartlett*, 587 U.S. 391, 405 (2019) (explaining that "unilateral dismissal by the [prosecutor] of drug charges" did not "constitute[] conclusive proof of [the criminal defendant's] innocence").  A prosecutor can abandon a charge for a multitude of reasons other than insufficient evidence of guilt.  *See United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) ("Certainly, we cannot attribute the government's decision not to prosecute to an independent determination that the defendant is not guilty" because "[t]here are many factors that influence th[at] . . . decision[.]"); *cf. United States v. Marion*, 404 U.S. 307, 312 (1971) (explaining that criminal charges can be dismissed "on grounds that ha[ve] nothing to do with guilt or innocence").  Thus, Hernandez's "explanation" of his "innocen[ce]"—that the driving with a suspended license charge had been abandoned—"d[id] not

have automatic, probable cause vitiating effect." *Wesby*, 583 U.S. at 67–68.

Hernandez also asserts that Deputy Riley violated the Fourth Amendment because the deputy also arrested him for resisting arrest without violence even though he lacked probable cause to do so.  But Deputy Riley did not violate the Fourth Amendment even if he did not have probable cause to arrest Hernandez for that specific offense.  Instead, false arrest claims, like this one, are governed by the "any-crime rule." *Garcia*, 75 F.4th at 1187. Under the "any-crime rule," an officer does not violate the Fourth Amendment so long as he has probable cause to arrest the suspect for *any* crime, "even if it was not the crime the officer thought or said had occurred." *Id.* (quoting *Williams*, 965 F.3d at 1158); *see Bailey v. Bd. of Cnty. Com'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.").  To plead a Fourth Amendment violation for false arrest, then, Hernandez had to allege that Deputy Riley lacked probable cause to arrest him for *any* crime. *See Garcia*, 75 F.4th at 1187; *Bailey*, 956 F.2d at 1119 n.4.  Hernandez failed to do so because his complaint established Deputy Riley was executing "a facially valid warrant" and thus had probable cause to arrest him for a crime—driving with a suspended license. *See Williams*, 965 F.3d at 1162; *Fullman*, 739 F.2d at 562.

### False Arrest Claim Against Deputy Cowling

Hernandez finally contends that the district court erred in dismissing his false arrest claim against Deputy Cowling based on the May 2020 warrantless arrest. We disagree.

"Probable cause is not a high bar," *Wesby*, 583 U.S. at 57, and "exists when the facts . . . establish a probability or substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quotation omitted). Under Florida law, battery includes "intentionally . . . strik[ing] . . . or [i]ntentionally caus[ing] bodily harm to another person." *See* Fla. Stat. § 784.03(1)(a).

Here, Hernandez's complaint alleged that his in-laws told Deputy Cowling that Hernandez entered their house, struck them both, and took Hernandez's children. The in-laws' statements gave Deputy Cowling probable cause to believe Hernandez committed battery because there was—at the very least—"a probability or substantial chance," *see Howard*, 25 F.4th at 898, that Hernandez "intentionally . . . str[uck]" his in-laws, *see* Fla. Stat. § 784.03(1)(a). Without facts showing Deputy Cowling arrested him without probable cause, Hernandez failed plausibly to allege that Deputy Cowling violated the Fourth Amendment. *See Richmond*, 47 F.4th at 1180.

Hernandez has three counterarguments in response. First, he asserts that he plausibly alleged Deputy Cowling violated the Fourth Amendment because his complaint provided enough facts showing Deputy Cowling lacked probable cause to arrest him for burglary, which was the offense that Deputy Cowling told

Hernandez he was arrested for. But, again, under the any-crime rule, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey*, 956 F.2d at 1119 n.4. Instead, an officer does not violate the Fourth Amendment if he has probable cause to arrest the suspect for any crime. *See id.*; *Garcia*, 75 F.4th at 1187. So even if there were sufficient facts showing Deputy Cowling lacked probable cause to arrest Hernandez for burglary, Hernandez still failed plausibly to allege a Fourth Amendment violation because his complaint established that Deputy Cowling had probable cause to arrest Hernandez for another crime—battery. *See Garcia*, 75 F.4th at 1187; *Bailey*, 956 F.2d at 1119 n.4.

Second, Hernandez argues that Deputy Cowling lacked probable cause to arrest him because he alleged that his in-laws later recanted their statement that Hernandez struck them. But we assess whether an officer has probable cause based on the "facts known . . . at the time of the arrest." *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *cf. Marx v. Grumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a [suspect] is subsequently acquitted . . . is of no consequence in determining the validity of the arrest itself."). Because the in-laws did not recant their statement until three months after the arrest, there were no facts showing Deputy Cowling lacked probable cause to arrest Hernandez for battery in May 2020. *See Devenpeck*, 543 U.S. at 152; *Marx*, 905 F.2d at 1507.

Third, Hernandez points to the allegations in the complaint that Deputy Cowling did not interview Hernandez before arresting

him, and that, if interviewed, Hernandez would have told Deputy Cowling that he entered his in-laws' house lawfully and did not strike them. He contends those allegations were enough to undermine Deputy Cowling's probable cause to arrest him for battery. We disagree. The allegation that Deputy Cowling failed to interview Hernandez did not undermine his basis for probable cause because Deputy Cowling did not have to "rule out [Hernandez's] innocent explanation for suspicious facts" before arresting him. *See Wesby*, 583 U.S. at 61. Officers "[a]re not required to forgo arresting [a suspect] based on initially discovered facts showing probable cause simply because [the suspect] offer[s] a different explanation." *See Marx*, 905 F.2d at 1507 n.6.

## CONCLUSION

Hernandez failed plausibly to allege that Deputies Girgis, Santana, Riley, or Cowling violated the Fourth Amendment. Thus, the district court did not err in dismissing Hernandez's claims against them.

**AFFIRMED**.