[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11574

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MELCHOR MUNOZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:18-cv-00351-AW-MAF

_____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

JILL PRYOR, Circuit Judge:

Three years after becoming a United States citizen, Melchor Munoz pleaded guilty to a drug-conspiracy offense, admitting under oath that he began trafficking marijuana in 2008. The government filed this action to denaturalize Munoz under 8 U.S.C. § 1451(a), alleging that he illegally procured his citizenship in 2009 because his prior participation in the drug conspiracy made him statutorily illegible for citizenship. After Munoz answered the complaint, the government moved for judgment on the pleadings. It argued that because of his admission Munoz was collaterally and judicially estopped from denying that he began trafficking marijuana in 2008. The district court granted the government's motion and entered a judgment denaturalizing Munoz.

On appeal, Munoz argues that the district court erred in determining that his guilty plea collaterally and judicially estopped him from relitigating the date he joined the drug conspiracy. We conclude that collateral estoppel is unavailable because the starting date of Munoz's drug offense was unnecessary to his prior conviction. The district court also abused its discretion in applying judicial estoppel. It found that Munoz persuaded the district judge who accepted his plea and sentenced him that his drug trafficking began in 2008 and would derive an unfair advantage if not estopped from denying that fact in this proceeding. But these findings are clearly erroneous because they lack evidentiary support in the record. Because neither collateral nor judicial estoppel applies, we vacate the district court's order and remand for further proceedings.

# I.    BACKGROUND

This appeal concerns the government's denaturalization proceedings against Munoz. In this section, we first review Munoz's naturalization proceeding and the representations he made to obtain citizenship. Next, we review Munoz's drug trafficking charge and his admissions under oath in pleading guilty. Lastly, we turn to the denaturalization proceeding itself.

## A.    Munoz's Naturalization Proceeding

Munoz applied for citizenship on June 6, 2009. On his application, he answered "no" to questions asking whether he had ever committed a crime or offense for which he was not arrested and whether he had ever sold or smuggled controlled substances. He certified, under penalty of perjury, that his answers were true and correct.

About a month after Munoz applied for citizenship, a United States Citizenship and Immigration Services officer interviewed him. The officer placed him under oath and asked him whether he had ever sold or smuggled controlled substances. Munoz answered "no." At the interview's conclusion, he signed his naturalization application, attesting that the information in it was true and correct.

Munoz's application was approved, and he became a citizen on September 8, 2009. Before taking the oath, he completed a questionnaire in which he again answered that he had committed no crime for which he had not been arrested nor had he trafficked controlled substances. Munoz certified under oath that his answers were true and correct as of that date.

**B.      Munoz's Drug-Conspiracy Conviction**

Almost two years after Munoz received citizenship, a grand jury charged him and others with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana. The first indictment alleged that the crimes occurred "[b]etween on or about January 1, 2010, and on or about May 30, 2011," Doc. 1-2 at 7;[1] a second superseding indictment expanded the timeframe to begin earlier, "[b]etween on or about June 1, 2008, and on or about May 30, 2011," Doc. 1-2 at 3.

Munoz pleaded guilty to the drug conspiracy charge in 2012. He signed the government's Statement of Facts, which primarily described drug activities in 2010 or later. But it also stated that an unnamed informant repeatedly picked up marijuana from Munoz at a drug stash house "[b]etween 2008 and 2010." Doc. 1-4 at 6. In the plea agreement, Munoz acknowledged that his "conviction may adversely affect [his] immigration status and may lead to revocation of his citizenship and deportation." Doc. 1-3 at 4.

At Munoz's change-of-plea hearing, Judge Robert L. Hinkle asked him, under oath, if he agreed with the Statement of Facts he had signed. Munoz never answered that question. Rather, his counsel responded that Munoz did "not disagree at all with the fact that the government could prove more than 5 kilograms of cocaine and

---

[1] "Doc." numbers refer to the district court's docket entries in the denaturalization case. "Crim Doc." numbers refer to the district court's docket entries in Munoz's criminal case.

more than 100 kilograms of marijuana." Doc. 1-5 at 9. Defense counsel stated that there were disputes about some of the "weight allegations" and "who was doing what for whom," but the disputes did "not impact the weights that would give rise to the conviction." *Id.* Munoz's counsel then stated that "there would be other disputes for sentencing purposes that go not to guilt or innocence." *Id.*

In response, Judge Hinkle "put aside" the Statement of Facts, such that Munoz's plea was not based on it. *Id.* Instead, Judge Hinkle asked Munoz to summarize his drug activities between 2008 and 2011, the timeframe of the indictment. *Id.* at 9–10. Munoz, still under oath, replied that he began distributing marijuana in "[l]ate 2008" and that he got involved in distributing cocaine at the end of 2010. *Id.* at 10. He confirmed that during his participation in the conspiracy he distributed at least 100 kilograms of marijuana and 5 kilograms of cocaine.

Later in the hearing, the government pointed out that Munoz was a naturalized citizen and that the government might seek to revoke his citizenship, though no decision about that had been made yet. The district court warned Munoz that a criminal conviction "could have an effect on [his] citizenship status." Doc. 1-5 at 20. Munoz confirmed that "nobody ha[d] made any promises to [him] about whether or not this will affect [his] citizenship status." *Id.* at 19–20. The district court accepted Munoz's guilty plea and ordered a presentence investigation report.

The district court adopted the presentence investigation report, including its two-point reduction for acceptance of responsibility and its guideline range of 188 to 235 months' imprisonment. Munoz argued for a sentence at the low end of the range; the government argued for the high end. The 2008 start date came up only once, during the government's argument. The government highlighted that Munoz had "been in the drug business for several years; he's been involved with substantial amounts of marijuana and cocaine going back to I think 2008." Crim. Doc. 586 at 16.

The district court rejected the government's argument, imposing a sentence of 188 months' imprisonment, "the low end of the guideline range." *Id.* at 19. The court "considered all of the 3553(a) factors" in reaching the sentence it imposed. *Id.* at 19–20. Four years later, Munoz successfully moved for a reduction of his sentence to 151 months' imprisonment. *See* 18 U.S.C. § 3582 (c)(2).

## C.    Munoz's Denaturalization Proceeding

Six years after Munoz pleaded guilty to the drug offense, the government filed this civil action seeking to revoke Munoz's U.S. citizenship under 8 U.S.C. § 1451(a). The government alleged that Munoz illegally procured his citizenship because his admission to, and conviction for, participating in the drug conspiracy precluded him from showing that he had the necessary good moral character required by 8 U.S.C. § 1427(a)(3).

To gain citizenship, an applicant must show that he was "a person of good moral character" during the five years before the application until the grant of citizenship. 8 U.S.C. § 1427(a).

Because Munoz applied for citizenship on June 6, 2009, and received it on September 8, 2009, he was required to have been "a person of good moral character" from June 6, 2004, until September 8, 2009. *Id.* As relevant here, the government alleged that Munoz was not a person of good moral character because, during this five-year period, he committed a drug-conspiracy offense, which constituted a controlled-substance offense, a crime involving moral turpitude, and an unlawful act adversely reflecting on moral character. Each of these grounds would have statutorily precluded Munoz from showing he had good moral character, making his citizenship illegally procured. *See id.* § 1427(a)(3). The factual basis for the government's allegations was that Munoz "admitted that he entered into the conspiracy and began possessing and distributing marijuana in late 2008, during the statutory period." Doc. 1 at ¶ 54.

Munoz responded in two ways. First, he moved under 28 U.S.C. § 2255 to vacate his drug-conspiracy conviction and sentence. He argued that his counsel provided constitutionally ineffective assistance by failing to advise him that his citizenship *would* be—rather than *could* be—revoked because he pleaded guilty. He asserted that his misunderstanding of the citizenship consequences made his plea involuntary. Second, he moved to stay the denaturalization proceeding pending a ruling on his motion to vacate.

The district court judge assigned to the denaturalization case, Judge Allen C. Winsor, granted the motion to stay. The

§ 2255 case was assigned to Judge Hinkle, who had accepted Munoz's guilty plea. Judge Hinkle denied Munoz's § 2255 motion, describing it as "timely but unfounded on the merits." Crim. Doc. 614 at 2.[2] Munoz appealed, and we affirmed the district court's denial of his motion to vacate, albeit because the motion was untimely.

With the motion to vacate denied, Judge Winsor lifted the stay in the denaturalization proceeding. After Munoz answered the government's complaint, the government filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Its argument tracked its complaint's allegations: that Munoz had illegally procured U.S. citizenship because his participation in a drug conspiracy between 2008 and 2010 constituted a controlled-substance offense, a crime involving moral turpitude, and an unlawful act that reflected adversely upon his moral character.

The government also argued that Munoz was collaterally estopped from denying that he participated in the drug conspiracy between June 2008 and May 2011, the dates in the second superseding indictment. It argued alternatively that Munoz was

---

[2] Judge Hinkle concluded that Munoz's ineffective-assistance and involuntary plea arguments in his § 2255 motion failed because Munoz's admissions about the starting date of his involvement in the drug conspiracy during the plea colloquy were inessential to his conviction. Because the admissions were inessential, the legal advice Munoz received—that pleading guilty *could*, rather than *would*, lead to denaturalization—was correct. Munoz pleaded guilty after receiving this correct advice.

judicially estopped from disputing his previous admissions as to the dates of his participation. It stressed three previous admissions: the signed Statement of Facts, which stated that he participated in trafficking marijuana between 2008 and 2010; his change-of-plea statement, which acknowledged the truth of the signed statement's facts; and his plea-colloquy statement, in which he admitted that he began receiving marijuana for distribution in late 2008.

Munoz responded, arguing that neither collateral nor judicial estoppel applied. Collateral estoppel did not apply, he argued, because the starting date of his criminal conduct was unnecessary to his conviction or sentence. Regarding judicial estoppel, he conceded that he advanced inconsistent positions. But he argued that the government failed to prove judicial estoppel's second prong: that he intended to make a mockery of the judicial system. Munoz pointed out that he had a benign reason for agreeing to the government's starting date, namely, that it had no impact on his conviction. And he had no idea that agreeing to this date could subject him to denaturalization. Munoz also stressed that Judge Hinkle never determined when the conspiracy began because that fact was inconsequential to his charge, conviction, and sentence.

The district court granted the government's motion for judgment on the pleadings, properly taking judicial notice of the records in Munoz's criminal case.[3] The court determined that

---

[3] *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

Munoz was collaterally estopped from denying the dates of his criminal conduct because he admitted that the drug conspiracy started in 2008, and Judge Hinkle relied on that admission in taking his plea. It rejected Munoz's argument that the dates of his criminal conduct were unnecessary to his conviction. Relying on our unpublished opinion in *United States v. Dor*, the district court reasoned that collateral estoppel was available and applied it in the government's favor. *See* 729 F. App'x 793 (11th Cir. 2018).

The district court also agreed with the government that judicial estoppel applied. It rejected Munoz's argument that the government failed to prove Munoz intended to make a mockery of the judicial system. It reasoned that Munoz affirmed in his plea the precise date he now disputed and that he did it to secure the acceptance-of-responsibility credit in his guideline calculation. "[A]llow[ing] Munoz to escape those admissions would make a mockery of the judicial system," the district court said. Doc. 62 at 10.

Because Munoz was estopped from denying his 2008 involvement in the drug conspiracy, the district court concluded that there were "no material issues of fact as to whether [Munoz] lacked the good moral character statutorily required to naturalize." *Id.* The government thus had shown that Munoz illegally procured his U.S. citizenship. The district court revoked and set aside the order admitting Munoz to U.S. citizenship and canceled his certificate of naturalization. Munoz appealed.

## II.   STANDARDS OF REVIEW

We review *de novo* an order granting judgment on the pleadings. *United States v. Lopez*, 75 F.4th 1337, 1340 (11th Cir. 2023). Judgment on the pleadings is appropriate when material facts are undisputed and the government, as the moving party, is entitled to judgment as a matter of law. *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). We also review *de novo* whether collateral estoppel is available. *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).

But even when the underlying motion warrants *de novo* review, we review for abuse of discretion the district court's decision to apply judicial estoppel. *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 642 (11th Cir. 2019). That is because *de novo* "review would displace the discretion of the district court to apply judicial estoppel with the discretion of the appellate court to do so." *Id.* (internal quotation marks omitted).

"An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination or bases an award upon findings of fact that are clearly erroneous." *Id.* (alteration adopted) (internal quotation marks omitted). A factual finding is clearly erroneous when the record does not support it or when we are "left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (internal quotation marks omitted).

## III.    DISCUSSION

The government must institute denaturalization proceedings if citizenship was "illegally procured." 8 U.S.C. § 1451(a). Citizenship is illegally procured when an applicant fails to comply "with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). One congressionally imposed prerequisite is that an applicant be "a person of good moral character" from five years before he applies until citizenship is granted. 8 U.S.C. § 1427(a). During that period, if a person commits specified crimes, then he cannot be found to be "a person of good moral character." *Id.* § 1101(f)(3); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1193–94 (11th Cir. 2005). The specified crimes include crimes "involving moral turpitude," violations of laws "relating to a controlled substance," and "unlawful acts that adversely reflect upon the applicant's moral character." 8 C.F.R. § 316.10(b); *see also* 8 U.S.C. § 1182(a)(2)(A)(i).

The government alleged that Munoz committed his drug-conspiracy crime during the good-moral-character period, therefore making his citizenship illegally procured. Its motion for judgment on the pleadings argued that Munoz was collaterally and judicially estopped from contesting when he began trafficking drugs. The district court agreed, applying collateral and judicial estoppel and ordering Munoz denaturalized.

On appeal, Munoz challenges only the district court's ruling that he was collaterally and judicially estopped from litigating when he began participating in the drug conspiracy. He does not

dispute that his offense qualified as a crime involving moral turpitude, a violation of a law relating to a controlled substance, and an unlawful act that adversely reflects upon moral character. We first discuss collateral estoppel before turning to judicial estoppel.

## A.    Collateral Estoppel

Collateral estoppel "forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1341 (11th Cir. 2021) (internal quotation marks omitted). Collateral estoppel is not available unless four conditions are met: "(1) the relevant issue must be identical to the issue involved in the prior proceeding, (2) the issue must have been actually litigated in the prior proceeding," (3) the issue's determination "must have been a critical and necessary part of the prior proceeding, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* For the third condition, the only one at issue here, "[a] determination ranks as necessary . . . only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009). We conclude that collateral estoppel is unavailable because Munoz's conviction did not hinge on the starting date of Munoz's criminal conduct.

"It is a well-settled rule of criminal practice that the date of an alleged offense, as stated in an indictment, . . . is only material in reference to the bar of limitation[] and to show that the offense was committed anterior to the presentment of the indictment." *United States v. McIntosh*, 580 F.3d 1222, 1228 (11th Cir. 2009)

(alteration adopted) (internal quotation marks omitted). We thus have recognized that "the date of the offense [is] not an essential element of the offense." *Id.* Of course, the date may be relevant to other concerns, such as indictment defects. But not here, because Munoz pleaded guilty and acknowledged that he participated in the conspiracy, starting at least in 2010. *See United States v. Deal*, 678 F.2d 1062, 1064 n.4 (11th Cir. 1982) ("[A] knowing and voluntary plea of guilty, made with the advice of counsel, waives all non-jurisdictional defects in the proceedings.").

The starting date's limited materiality is confirmed by the elements the government had to prove to convict Munoz. The government had to prove beyond a reasonable doubt that he knowingly or intentionally conspired "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. §§ 841(a)(1), 846. Because it did not need to prove when the conspiracy began, the starting date was unnecessary to the conspiracy conviction.

The government resists this conclusion with two arguments. First, it argues that the starting date was necessary because, in deciding whether to accept Munoz's guilty plea, the district court relied on the totality of the facts that Munoz admitted. But the district court did not rely on the starting date in deciding whether to accept the guilty plea. Judge Hinkle explained in his order denying Munoz's § 2255 motion that Munoz's admissions about the starting date of his involvement with marijuana distribution were not essential to his conviction. According to the district

court, the statements established only that Munoz committed the offense "at some time" between 2008 and 2011, and "[t]he plea and conviction do not establish that Mr. Munoz's involvement began on or before" Munoz's citizenship date. Crim. Doc. 614 at 11–12. In essence, Judge Hinkle said that in adjudicating Munoz's guilt he did not rely on the truth of Munoz's statements about when he began participating in the conspiracy.

Regardless of whether the district court in fact relied on the starting date, it was legally immaterial to the conviction. The district court's acceptance of Munoz's guilty plea cannot hinge on a legally immaterial issue, so the starting date must be unnecessary for collateral estoppel purposes. *See Bobby*, 556 U.S. at 835.

Second, the government argues that the starting date was necessary for sentencing because Judge Hinkle "considered the resulting amount of marijuana—going back to 2008—to be substantial" and thus elevated Munoz to the very top of his sentencing guideline range." Appellee's Br. 26 (internal quotation marks omitted). Yet the record tells another story. The district court imposed a sentence of 188 months—"the low end of the guideline range." Crim. Doc. 586 at 19. It considered all the § 3553(a) factors and never mentioned the conspiracy's starting date.

The government's arguments at sentencing fail to show that the starting date was an essential consideration for Munoz's sentence. Instead, the government, when arguing for the very top of the guideline range, stressed the drug quantity. True, the prosecutor mentioned that Munoz's involvement went "back to I think

2008." *Id.* at 16. But he argued that Munoz's "drug quantity, the equivalence of 93,000 kilograms, puts him at the very top of [the] range." *Id.* at 16–17. The district court's decision to sentence Munoz to the range's low end thus did not "hinge[] on" when he began participating in the conspiracy. *Bobby*, 556 U.S. at 835.[4]

We conclude that collateral estoppel is unavailable at this stage of the case because the 2008 date was not a necessary part of the prior judgment. This conclusion says nothing about the government's underlying denaturalization case; the government may *prove* that Munoz participated in the drug conspiracy in 2008. But collateral estoppel does not preclude Munoz from litigating the issue and arguing that his participation in the conspiracy began after he became a citizen.

## B.    Judicial Estoppel

Judicial estoppel "'prevent[s] the perversion of the judicial process' and 'protect[s] its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017)

---

[4] The government and the district court both relied on *United States v. Dor* to support their positions. 729 F. App'x 793. There, we affirmed the application of collateral estoppel in denaturalization proceedings. *Id.* at 795, 798. But in addition to being nonbinding, the *Dor* opinion lacks any reasoning for its application of collateral estoppel. Unpublished opinions matter "only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (internal quotation marks omitted). Without rationale, we have no reason to consider *Dor*.

(en banc) (alterations adopted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Two different tests govern judicial estoppel's application, depending on whether the party seeking to apply it was a party to the prior proceeding in which the other party took an inconsistent position.

The Supreme Court outlined the first test in *New Hampshire*, 532 U.S. at 750–51. We have said that the *New Hampshire* test applies when "the party seeking to apply judicial estoppel . . . was a party to the prior lawsuit in which [the other party] had taken an inconsistent position." *Slater*, 871 F.3d at 1182. *New Hampshire* discussed three factors which "typically inform the decision whether to apply" judicial estoppel. 532 U.S. at 750. First, the party's two positions must be clearly inconsistent. *Id*. Second, the party must have succeeded in persuading a court to accept its earlier position. *Id*. And third, the party must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 751.

We described the second test in *Slater*, 871 F.3d at 1181. The *Slater* test applies when "the party seeking to invoke judicial estoppel was not a party to the [prior] case." *Id*. at 1182 n.7. *Slater*'s two-part test requires that the party "took an inconsistent position under oath in a separate proceeding" and the "inconsistent positions were calculated to make a mockery of the judicial system." *Id*. at 1181 (internal quotation marks omitted). By "make a mockery of the judicial system," we do not mean that the party's purpose in taking inconsistent positions was to mock or make fun of the

courts. Instead, the intent requirement focuses on whether the party taking an inconsistent position would benefit from it, such as by "deriv[ing] an unfair advantage or impos[ing] an unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 751. In *Slater*, although we adopted the "make a mockery" language from our earlier precedents, we described the inquiry as "whether the plaintiff actually intended to manipulate the judicial system to his advantage." 871 F.3d at 1186. It seems to us that this may be a more useful way to describe the make-a-mockery requirement.[5]

Because the government seeks to invoke judicial estoppel and was a party to the prior proceeding, we apply *New Hampshire*'s three-prong test.

First, the government must prove that Munoz's later position was clearly inconsistent with his earlier position. *New Hampshire*, 532 U.S. at 750. That is easy for the government here: Munoz conceded in the district court that he took an inconsistent position under oath in a separate proceeding. Doc. 60 at 15 (conceding "readily" that "the positions [Munoz] advances are inconsistent"). And Munoz is right to concede the point. He said under oath during his change-of-plea hearing that he began receiving and distributing marijuana in late 2008. Yet he represented under penalty of perjury in his naturalization proceeding that he engaged in no criminal activity before his 2009 naturalization application. Because

---

[5] We note that our Circuit appears to be the only one that phrases judicial estoppel's intent requirement using the make-a-mockery language. Perhaps this is not surprising—the meaning of the phrase is not self-evident.

these positions are inconsistent, we move to the next part of the test.

Second, the government must show that Munoz "succeeded in persuading a court to accept [his] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted). This requirement ensures that judicial estoppel applies only when an inconsistent position risks "inconsistent court determinations" and thus poses a "threat to judicial integrity." *Id.* at 751 (internal quotation marks omitted).

The district court determined that Judge Hinkle accepted Munoz's earlier position when he relied on the Statement of Facts to accept Munoz's plea. The district court explained that Munoz's counsel "told [Judge Hinkle] that Munoz disputed portions of the statement of facts related to 'the time frames of [his] activities.'" Doc. 62 at 9. It reasoned that Judge Hinkle asked Munoz to state "the facts supporting his guilty plea" to ensure that there was a factual basis for accepting the plea. *Id.* Munoz affirmed that he started trafficking drugs in 2008. Judge Hinkle, according to the district court, then relied on the truth of Munoz's statement to adjudicate his guilt.

The record refutes this determination. Munoz's counsel told Judge Hinkle that the defense's disputes with the facts were "for sentencing purposes" and did not go "to guilt or innocence." Doc. 1-5 at 9. Because Munoz's counsel never disputed the time frames

for purposes of Munoz's *conviction*, Judge Hinkle had no need to seek clarification from Munoz to adjudicate his guilt.

And, again, as a legal matter, the dates of Munoz's criminal conduct were not necessary to ensure the factual basis of his plea. As we explained in our collateral estoppel discussion, the starting date of Munoz's criminal conduct was legally immaterial to the conspiracy charge the government pursued. *See* 21 U.S.C. §§ 841(a)(1), 846. Because Munoz pleaded guilty to the criminal conduct within the time frame covered by the indictment, the district court had no need to establish the starting date to ensure that it had a factual basis for accepting the plea. The district court's contrary finding is unsupported by the record and therefore clear error.

Third, the government must establish that Munoz "would derive an unfair advantage or impose an unfair detriment on [the government] if [he were] not estopped." *New Hampshire*, 532 U.S. at 751. The district court said that Munoz gained an unfair advantage because he "secured the benefit of his plea agreement when he received an acceptance-of-responsibility credit in his guideline[] calculation." Doc. 62 at 9–10. For this to matter in the judicial estoppel analysis, Munoz had to have received this reduction in offense level because he admitted that the crime began in 2008—instead of receiving the reduction because he pleaded guilty to the substantive elements of the crime. But the record reveals no benefit that Munoz received from pleading guilty to a drug trafficking crime *that started in 2008* rather than simply pleading guilty to the crime. Because no record evidence supports the district court's

inference about Munoz's potential benefit, this finding is clearly erroneous.[6]

Because the district court's factual findings were clearly erroneous, the court abused its discretion when it ruled that Munoz was judicially estopped. This conclusion, like the collateral estoppel one we reached above, is no way determinative of the government's underlying denaturalization case. The district court may hold a hearing to allow the government the opportunity to prove that Munoz participated in the drug conspiracy in 2008. But neither collateral nor judicial estoppel precludes Munoz from litigating the issue on remand. On remand, if Munoz chooses to testify about when he joined the drug conspiracy, the district court is free to reject his testimony, even if it is uncontradicted.[7] *See Slater*, 871 F.3d at 1190–91 (Carnes, C.J., concurring) (explaining that "in keeping

---

[6] The government also argues that Munoz took an inconsistent position about whether his plea should lead to revocation of his citizenship in his unsuccessful § 2255 motion. The district court noted that inconsistency "as an aside," in a footnote, and without basing its judicial estoppel ruling on it. Doc. 62 at 10 n.7. Because Munoz failed to persuade the court to accept his argument in his § 2255 motion, he received no benefit from the inconsistency, and judicial estoppel is inapplicable. *See New Hampshire*, 532 U.S. at 750.

[7] *See, e.g.*, *Burston v. Caldwell*, 506 F.2d 24, 26 (5th Cir. 1975) ("The district court, of course, was not required to accept [the petitioner's] testimony, even if uncontradicted."); *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1310 (11th Cir. 1988) (explaining that the factfinder "was not bound to accept the plaintiff's evidence . . . even if it was not controverted").

In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

with the long-established law of this circuit," a district court is not required to simply accept the testimony of a party, even when that testimony "is made under oath and not contradicted by other evidence").

## IV.    CONCLUSION

For the above reasons, we vacate the district court's order granting the government's motion for judgment on the pleadings and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED.**