[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13567

Non-Argument Calendar

_____

BABAK PAYROW,

                                                            Plaintiff,

MEHRNOOSH PAYROW,

                                                Plaintiff-Appellant,

*versus*

CHAD CHRONISTER,
in his official capacity as Sheriff of Hillsborough County,
DAVID CLOUD,
in his individual capacity,

                                                Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00520-TPB-UAM

———————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Mehrnoosh Payrow, as guardian of Babak Payrow, appeals the summary judgment in favor of Sheriff Chad Chronister and Deputy David Cloud and against Babak Payrow's complaint alleging claims of a seizure and use of excessive force in violation of the Fourth Amendment and excessive force, false arrest, and false imprisonment under Florida law. *See* 42 U.S.C. § 1983. We affirm.

## I. BACKGROUND

In 2020, Babak Payrow was tried for attempted murder of a law enforcement officer. The state trial court concluded he was competent to stand trial. Payrow proceeded to trial represented by counsel.

Deputy Cloud testified that he decided to stop when he saw Payrow sitting on an electrical box in a dark area. Payrow initially walked away from Deputy Cloud's car. When Deputy Cloud stopped his car and turned his spotlight on, Payrow began to walk towards the car with an object in his hands. Deputy Cloud exited

his car and stood by the driver door. He asked Payrow if he was alright and told him to show his hands, which were in a bag he was carrying. Payrow did not respond to Deputy Cloud's commands and continued to approach him. Payrow stopped in front of the car and said he was FBI special investigations, and Deputy Cloud knew that something was not right. He backed away from Payrow and told him to move back and show his hands. When Payrow was an arm's length away, he lunged at Deputy Cloud with a knife-like object, and Deputy Cloud believed Payrow was going to kill him. He shot Payrow within seconds. A screwdriver was found on the ground next to Deputy' Cloud's car. A partial DNA profile for the screwdriver matched Payrow's DNA profile.

Daniel Rojas also testified that he was outside a nearby home during the event. Rojas saw Deputy Cloud pull up behind Payrow and shine a spotlight on him. After Deputy Cloud got out of his vehicle, he spoke to Payrow. Deputy Cloud told Payrow to stop so he could talk to him. Payrow then "rushed" at Deputy Cloud "[i]n an aggressive manner" such that it appeared he "was going to tackle the officer." Deputy Cloud fired his gun as Payrow ran toward him. Rojas did not see anything in Payrow's hands. After he heard the shots, he ran inside.

Payrow testified in his own defense. He testified that Deputy Cloud did not shoot him and that he was shot by an armed robber at another location. He denied ever seeing Deputy Cloud before trial. The jury acquitted Payrow.

Payrow then filed a civil suit in state court. The defendants removed the suit to the district court. Payrow's amended complaint asserted claims of excessive force and false arrest against Deputy Cloud, 42 U.S.C. § 1983, and claims of battery, false arrest, and false imprisonment against Sheriff Chronister under Florida law.

Deputy Cloud and Sheriff Chronister moved for summary judgment. They argued that Payrow's claims were barred by judicial estoppel because he had previously testified at his criminal trial that he was shot by a different person. They further argued that if Payrow's mental health precluded a defense of judicial estoppel, his testimony could not be relied upon because he was not competent to testify and could not be believed. Deputy Cloud also argued the claims against him were barred by qualified immunity. And Sheriff Chronister argued that Payrow failed to establish his state-law claims and that those claims were barred by sovereign immunity.

Payrow responded that judicial estoppel should not apply because he could not have the intent to manipulate the court based on his mental health issues. He also argued against the application of qualified and sovereign immunity. Payrow did not rely on his own deposition testimony in his responses, and instead relied on Deputy Cloud's and Rojas's testimony. He submitted a psychological assessment that he had schizophrenia and exhibited delusions. While the motions were pending, Payrow was appointed a guardian based on total incapacitation.

The district court granted summary judgment. It ruled that judicial estoppel barred Payrow's complaint because he had taken an inconsistent position during his criminal trial. It ruled that in the absence of judicial estoppel, summary judgment was still appropriate because Payrow waived any argument relying on his own deposition testimony. It ruled that Deputy Cloud was entitled to qualified immunity because his use of force was objectively reasonable and he had probable cause to arrest Payrow. It ruled that Payrow had not established state-law claims of excessive force and false arrest for the same reasons.

## II. STANDARDS OF REVIEW

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022) (citation and internal quotation marks omitted). But we review a district court's decision to apply judicial estoppel for abuse of discretion. *United States v. Munoz*, 112 F.4th 923, 932 (11th Cir. 2024).

## III. DISCUSSION

We divide our discussion into three parts. First, we explain that Payrow's claims are barred by judicial estoppel. Second, we explain that absent judicial estoppel, Deputy Cloud would be entitled to qualified immunity. Third, we explain that absent judicial

estoppel, Payrow's state-law claims against Sheriff Chronister would fail as a matter of law.

*A. The District Court Did Not Abuse Its Discretion by Applying Judicial Estoppel.*

"Judicial estoppel prevents the perversion of the judicial process and protects its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 934 (citation and internal quotation marks omitted, alterations adopted). When the party seeking to apply judicial estoppel was not a party in the prior proceeding where the other party took an inconsistent position, a two-part test applies. *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1182 (11th Cir. 2017) (en banc). The party must have taken "an inconsistent position under oath in a separate proceeding" and the inconsistent positions must have been "calculated to make a mockery of the judicial system." *Id.* at 1181 (citation and internal quotation marks omitted).

Payrow clearly "took an inconsistent position under oath in a separate proceeding." *Id.* In support of his acquittal, Payrow testified that he did not have an encounter with Deputy Cloud and that someone else shot him, and he denied ever seeing Deputy Cloud before trial. He now asserts that Deputy Cloud used excessive force when he shot him. The only question is whether Payrow's "inconsistent positions were calculated to make a mockery of the judicial system." *Id.* (citation and internal quotation marks omitted).

The district court did not clearly err in finding Payrow had the requisite intent. A finding that a party had the requisite intent is a factual finding that we review for clear error. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010). "[T]he intent requirement focuses on whether the party taking an inconsistent position would benefit from it, such as by deriving an unfair advantage or imposing an unfair detriment on the opposing party." *Munoz*, 112 F.4th at 935 (citation and internal quotation marks omitted, alterations adopted). The party must have "actually intended to manipulate the judicial system to his advantage." *Id.* We may infer intent from all the facts and circumstances and consider the party's degree of sophistication, any explanation for the omission, and whether he corrected any mistake. *Slater*, 871 F.3d at 1176–77. "Judicial estoppel should not be applied when the inconsistent positions were the result of inadvertence or mistake because judicial estoppel looks towards cold manipulation and not an unthinking or confused blunder." *Id.* at 1181 (citation and internal quotation marks omitted, alteration adopted). Payrow had a motive to deny his encounter to obtain an acquittal for attempted murder, and he had a motive to change his story to obtain a civil damages award.

The record supports a finding that Payrow changed positions to "deriv[e] an unfair advantage." *Munoz*, 112 F.4th at 935. He failed to explain the divergence, admit that he had not told the truth, or correct any mistake. *Slater*, 871 F.3d at 1176–77. When asked about inconsistencies in his testimony, he stated he did not remember his prior testimony and did not say it was a mistake. His

change in position was "not an unthinking or confused blunder." *Id.* at 1181.

Payrow argues that his schizophrenia diagnosis makes it so he could not have intended to manipulate the courts based on his lack of sophistication. He argues that the district court did not sufficiently consider records about his mental health. We disagree.

We cannot say the district court abused its discretion when it invoked the flexible, equitable doctrine of judicial estoppel. *Id.* at 1187 ("Equity eschews mechanical rules and depends on flexibility." (citation and internal quotation marks omitted)). The district court considered his schizophrenia diagnosis and found that Payrow failed to explain how that diagnosis made his change in position a mistake. The district court considered all the circumstances, including his mental health, but decided the lack of explanation for a divergence or effort to correct a mistake, along with the benefit Payrow gained from his inconsistent positions, established an intent to manipulate the system. We are not "left with a definite and firm conviction that a mistake has been committed" in finding Payrow had the requisite intent. *Robinson*, 595 F.2d at 1275 (citation and internal quotation marks omitted).

## B. The District Court Did Not Err in Ruling Deputy Cloud Was Entitled to Qualified Immunity.

Even if Payrow's claims against Deputy Cloud were not barred by judicial estoppel, he would still be entitled to qualified immunity. As the district court found, Payrow did not argue in response to the motions for summary judgment that his deposition

testimony was competent or that it was not utterly discredited by the record so that it created a genuine issue of material fact, which was "likely a strategic decision to bolster his opposition to judicial estoppel" based on his mental health issues. Instead, he relied on Rojas's and Deputy Cloud's testimony. So, he has forfeited any argument that his testimony was competent and could create a genuine issue of material fact. *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (holding that arguments not made in a summary judgment response are forfeited). Like the district court, we rely on Rojas and Deputy Cloud's version of events.

Deputy Cloud was entitled to qualified immunity from Payrow's claims of violations of the Fourth Amendment. Qualified immunity protects a government official from suit in their individual capacity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Richmond*, 47 F.4th at 1179 (citation and internal quotation marks omitted). After an official establishes that he was acting within his discretionary authority, which the parties do not dispute here, the plaintiff bears the burden to establish that the official violated a clearly established constitutional right. *Id.*

Deputy Cloud was entitled to qualified immunity from the claim that his warrantless arrest violated the Fourth Amendment. Payrow argues that Deputy Cloud conducted an unlawful stop when he initially encountered Payrow. But Deputy Cloud's initial contact did not constitute a seizure. Absent physical force, a seizure

requires both a show of authority and "*submission* to [that] assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The testimony of both Deputy Cloud and Rojas established that Payrow did not acquiesce to Deputy Cloud's show of authority asking him to stop. Payrow instead charged at him. By the time of the shooting and arrest, Deputy Cloud had probable cause. "Arguable probable cause for any offense [bars a] false arrest claim on all charges." *Hardigree v. Loftin*, 992 F.3d 1216, 1230 (11th Cir. 2021). Payrow charged at Deputy Cloud before being shot. That action supplied probable cause to arrest Payrow for assault of a law enforcement officer. *See* Fla. Stat. § 784.07.

Deputy Cloud was also entitled to qualified immunity from the claim that he used excessive force. In determining whether the use of force was objectively reasonable under the Fourth Amendment, we look at the totality of the circumstances and consider the facts "from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts." *Powell v. Snook*, 25 F.4th 912, 921 (11th Cir. 2022) (citation and internal quotation marks omitted). Officers are often required to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) (citation and internal quotation marks omitted). An officer may use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm," "reasonably believes that the use of deadly force was necessary to prevent escape," and "has given some warning about the possible use of

deadly force, if feasible," though a warning is not always required. *Powell*, 25 F.4th at 922–23 (citation and internal quotation marks omitted). "We have held that it is reasonable, and therefore constitutionally permissible, for an officer to use deadly force when he has probable cause to believe that his own life is in peril." *Singletary*, 804 F.3d at 1181 (citation and internal quotation marks omitted).

Payrow argues there is a dispute of material fact about whether he was armed. He relies on Rojas's testimony that he did not see Payrow with a weapon and an expert witness disclosure calling into question the DNA testing on the screwdriver. But neither creates a genuine issue of material fact.

Rojas's testimony was not inconsistent with Deputy Cloud's testimony. Although Rojas testified that he did not see Payrow with a weapon, he also testified in his criminal deposition that he did not see Deputy Cloud draw his revolver, and "if [Payrow] had a little screwdriver on him or something, that was out of my sight, you know, not that I was looking." He was further away from Payrow, at night, and was not looking at either party's weapon, so his failure to see Payrow's weapon does not create a dispute of material fact. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1168 (11th Cir. 2009) (holding that an officer's testimony that he did not see a gun from far away with an obscured view did not create a genuine issue of material fact when other officers at the scene stated the suspect brandished a gun). And an expert witness's testimony regarding the reliability of DNA analysis does not create a genuine issue of material fact as to whether Deputy Cloud saw Payrow with a weapon.

Deputy Cloud's and Rojas's testimony established that Deputy Cloud was alone, at night, facing a disturbed individual claiming to be an FBI agent, who advanced even when Deputy Cloud warned him to stop. Payrow then charged at him from close range with a screwdriver. Deputy Cloud was forced to make a split-second decision to protect himself from serious harm. Based on these facts, we cannot say the use of deadly force was unreasonable.

*C. The District Court Did Not Err in Ruling Payrow Failed to Establish His State-Law Claims.*

Payrow failed to establish his state-law claims of false arrest, false imprisonment, and excessive force. Deputy Cloud's actions did not constitute a state-law battery for the same reasons his use of force was not a constitutional violation. *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 891–92 (11th Cir. 2024) ("This Court has applied the same Fourth Amendment excessive force analysis to a battery claim against an officer under Florida law."). And his claims of false arrest and false imprisonment fail because, as explained above, Deputy Cloud had probable cause to arrest Payrow. *See Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021) ("Probable cause bars a claim for false arrest under Florida law just as it does under federal law.").

We **AFFIRM** the summary judgment in favor of Sheriff Chronister and Deputy Cloud.